————o————

## No. 4232.

### (Court of Appeal, Parish of Orleans.)

### HEIRS OF NELSON JONES vs. CHARLES FORD.

Even though a person promise another on his deathbed to look after and care for his children, (the mother and natural tutrix of the minors being alive and capable of managing their affairs) he will not thereby be deemed to have assumed the responsilibities resulting from an administration of an estate when the facts show him to have acted as the agent of the natural tutrix, and if the property constituting the estate should subsequently be sold for delinquent taxes antedating the assumption of the duties of agent of the tutrix, and of which delinquent taxes and subsequent sale without right of redemption he seems to have been ignorant, he purchases the prpoerty from the tax purchaser, this acquisition for himself, he having no funds for the minors with which to buy for them, and being under no obligation so to do, will be held to be good.

Appeal from Civil District Court, Division "C."

A. E. & O. S. Livandais, for Plaintiff and Appellant.

Albert Voorhies, for Defendant and Appellee.

ESTOPINAL, J.   Plaintiff's claim the ownership of certain

property avering that the said property came to them by inheritance from Alexander Jones, their father, who died during the year 1885. They allege that they are the sole and only heirs of their said father and issue of his marriage with Anaise Ford. That their father inherited the property in dispute from his father, Nelson Jones, who died in 1880. That since the death of their father, Alexander Jones, Charles Ford, his brother-in-law, to whom their father, on his deathbed, had specially entrusted their care and welfare, has been in possession of said property and refuses to turn the same over to plaintiffs and to account to them fo rthe rents and revenues. The defendant denies the allegations of plaintiffs' petition, and especially that they inherit from Nelson Jones, through their father, Alexander Jones, and further answering defendant avers that said property was sold for the delinquent taxes, State and City, on July 24th, 1886, for the taxes due on said property for the years 1871-1874-1875-1878; that the property was adjudicated to J. B. Arnoult, who paid the amount of his bid, the act of sale being passed before A. A. Ker, Notary Public. That subsequently, on November 15th, 1886, said Arnoult sold said property (one in dispute herein) to him (defendant) the act of sale having been passed before R. C. Stockton and that the same was recorded at the time in the Conveyance Office; that since purchasing said property, defendant claims to have been in possession as owner and that he has since then paid all taxes on said property which has been regularly assessed in his name. Claiming to have bought in good faith and to have held possession in good faith continuously from 1886 until the present time, he pleads the Constitutional prescription of three years as well as the ten years prescription with title translative of property, in bar of plaintiffs' demand.

The defendant presents as a muniment of title an act of sale by which J. B. Arnoult conveys to him (Ford) all his right, title and interest in the property. Arnoult's title springs from a tax sale at which he was the successful bidder, the property having been sold for the unpaid taxes of 1871-1874-1875 and 1878, the assessment for those years being in the name of Nelson Jones. The tax sale was made in 1886 and it appears that though Nelson Jones had been dead since 1880, the property continued to be assesed in his name. Plaintiffs contend

that the tax sale for that reason is null because it was the sale for taxes of property assessed in the name of a dead man.

It appears to us that the inquiry to be made is not whether the property is properly assessed at the time of its sale, but whether the assessment was correctly made during the years in which the tax payer defaulted and for which the property was subsequently sold. Nelson Jones died in 1880, a time subsequent to the years in which he was delinquent in the payment of his taxes (1874-5-8) during which years the assessment, admittedly, was propertly made in his name.

The point urged by plaintiff that Alexander Jones on his death bed entrusted the care of his children's property to the defendant and that the latter having accepted the trust is liable to the heirs for an accounting of his management of their property may be good in law under certain conditions, but we do not deem that this doctrine can be applied to the instant case.

The record shows that Chas. Ford the defendant did take care both of the person of minors, of their mother, who was his sister, and of the property. For for many years he fed and clothed them and provided medical attention; that the revenues of the property in controversy herein averaged about three dollars monthly; that the revenues did not near suffice to provide for the maintenance of his voluntary charges. That in collecting rents and otherwise looking after the property *he was acting for his sister,* the mother of plaintiffs and their natural tutrix, upon whom, as such, devolved the duty of managing and caring for the minors' property. Our learned and esteemed brother of the District Court in the written reasons given for his judgment in the matter has, in our opinion, so correctly applied the law to the facts of the case, that we shall adopt his reasons as those of this Court. The District Judge said:

"The doctrine that an intermedler in the affairs of a minor assumes *ipso facto* toward said minor, all the obligations of a tutor and is estopped from denying them, has its limitations and cannot apply to a case like this, where such minors had a natural tutrix living and capable of taking charge of their affairs.

"Defendant presumably, and in very fact, acted solely as

her agent, and no expressions of the father verbal or otherwise could displace her authority or put the responsibility upon the defendant. Now the evidence in this case shows that it was through no fault of the defendant that plaintiff lost their property. The unpaid taxes for which the property was sold were of a long time antedating the death of their father; defendant seems to have had no knowledge that said taxes were unpaid, or that the property (was) about to be sold to enforce payment until after the property had actually been sold to a third person and without right of redemption; he had in his possession no money belonging to them with which to purchase said property and was under no obligation whatever to do so for their account; their mother and natural tutrix had appeared in the tax sale and for a consideration ratified the same.

There was, therefore, as far as I can see, no reason why defendant should not, if so disposed, acquire the property which had then ceased to belong to the minors; and having done so, he stands precisely as any other person who had acquired the same under similar circumstances, for it is not pretended that the tax sale was not bona fide or that same was for his account or benefit. As to the title itself, whatever defects there might have been, if any, in the original acquisition by his vendor at the tax sale, they are now cured by the Constitutional prescription which avail him as they would any other.

"There will, therefore, be judgment in favor of defendant rejecting the demand of the plaintiffs at their cost."

The judgment appealed from is not error and it is hereby affirmed.